BRIANT, *Plaintiff in Error*, v. JACKSON *et al.*

1.  **Sheriff's Sale**: LAND OF DECEDENT: HEIRS AS PURCHASERS.   The
heirs of a decedent are competent to purchase land at a sale under
execution and judgment in favor of the administrator of the
decedent.

2.  **Administrators**: SALE OF DECEDENT'S LANDS: PURCHASERS.
Revised Statutes, 1879, section 166, prohibiting an administrator
or executor from purchasing the land of the decedent, has no refer-
ence to sales other than probate ones.

3.  **Fraud.**   Fraud will not be assumed from mere obscurity or appar-
ent error, nor titles be disturbed upon plausible conjecture.

4.  **Sheriff's Sale**: INADEQUACY OF CONSIDERATION.   Mere inade-
quacy of consideration, though a circumstance of great weight, is
not sufficient to set aside a sheriff's sale.

5.  ―――― : ――――.   It is usually esteemed a badge of fraud and with
other circumstances may be decisive.

6.  ――――.   The evidence in this case reviewed and found to be no
fraud on the part of the purchasers at the sale.

7.  **Administrator**: SALE OF DECEDENT'S LAND.   An administrator
should not bid in land for the estate at a sale under a circuit court
judgment in his favor, especially where the estate is insolvent.

*Error to Cass Circuit Court.*—HON. JAS. B. GANTT, ,
Judge.

AFFIRMED.

*Boggess & Moore* for plaintiff in error.

(1)   When the defendant Jackson became the admin-
istrator of the estate of Jacob Fudge, deceased, the debt

of Erwin, on which the judgment was rendered in his favor, under which the lands sought to be affected by this proceeding were sold, vested in him, in trust, for the use and benefit of those entitled thereto, under the laws of this state: First, the creditors; second, the heirs-at-law. It was his duty to preserve the trust fund for those so entitled, as aforesaid. Had he bought in said land at the execution sale, as he might have done, with said trust funds, and taken title to himself, he would have taken and held the land on and subject to the same trusts as aforesaid. When he caused said real estate to be sold and bought in, in the names of his wife and her brothers and sisters, the heirs-at-law of said Fudge, paid therefor out of and with said trust funds, and caused title to same to be conveyed to them, they took and held said land upon and subject to the same trusts as the said Jackson held said funds—in trust for the use and benefit of those entitled thereto under the laws of this state: First, for the creditors; and, second, for the heirs-at-law. 1 Pom. Eq., secs. 422–473; 2 Pom. Eq., secs. 587, 1049, 1077, 1080; 1 Perry on Trusts [3 Ed.] secs. 127–225; 1 Story's Eq. [12 Ed.] sec. 322, and note; *Davoue v. Fanning*, 2 Johns. Ch. 251; *Allen v. Gillett*, 21 Fed. Rep. 273; *Michoud v. Girod*, 4 How. 503; *Wolf v. Robinson*, 20 Mo. 460; *Smith v. Isaac*, 12 Mo. 106; *Thornton v. Irwin*, 43 Mo. 153; *Grumly v. Webb*, 44 Mo. 451; *Ray v. Copelin*, 47 Mo. 83; *Lass v. Sternberg*, 50 Mo. 126; *Gaines v. Allen*, 58 Mo. 545; *Kitchen v. Railroad*, 69 Mo. 260; *Hull v. Vorhis*, 45 Mo. 555; *Durfee v. Moran*, 57 Mo. 374; *Roberts v. Mosely*, 64 Mo. 507; *Baker v. Railroad*, 86 Mo. 75; *Edwards v. Gotschalk*, 25 Mo. App. 549; *Harper v. Mansfield*, 58 Mo. 17; *Clark v. Drake*, 63 Mo. 354; *Meyer v. Jefferson*, 5 Mo. App. 250. (2) When the defendants had caused and procured said land to be so sold and bought, and the title vested, as in the previous proposition predicated, they were guilty

of at least constructive fraud, from which a resulting trust arose: First, in favor of the creditors; second, in favor of the heirs-at-law. (3) When the said Jackson, the administrator, his wife and the other heirs-at-law, disclaimed that said purchase, and taking title as afore-' said, was in trust as aforesaid, and claimed the land for themselves, they became guilty of fraud in fact, which must, by all the rules of correct reasoning, be held to relate back to the beginning and embrace the whole transaction. (4) Whatever else than as above predi-cated may be thought of the conduct of the heirs-at-law, in connection with the proposition of fraud in fact, yet, as the administrator and his attorney of record in the case, whose imperative duty it was to pre-serve the fund in trust for the purpose aforesaid, repre-sented them in the purchase of said land, were derelict in duty, guilty of fraud in law, and probably guilty of fraud in fact, the fraud of the agents must be imputed to the principals.

*A. Comingo* and *Railey & Burney* for defendants in error.

(1) Plaintiff charges defendants with actual, inten-tional fraud in purchasing at sheriff's sale, on the seventh of July, 1876, the land in his petition described. It is not pretended that this charge is supported by the evidence. (2) In the absence of evidence clearly estab-lishing, by direct proof, or reasonable inference, the existence of actual fraud on the part of the defendants, the relief sought cannot be granted. The court below, that heard all the evidence, and saw the witnesses, and was able to judge of their credibility, found that fraud did not exist. The case is one in which this court will, according to established usage, defer, in a great measure, to the finding of the lower court. *Dallam v. Renshaw*, 22 Mo. 533; *Chapman v. McIlwrath*, 77 Mo.

38. (3) It is worthy of consideration that plaintiff does not seek to set aside the sale and conveyance to defendants, but asks that they be declared fraudulent as to him, and that they hold the land in trust for the payment of his judgment, rendered nearly two years after their purchase, and of questionable validity until it was affirmed by this court, February 18, 1884, almost eight years subsequent to their purchase. (4) If the price paid for the land was inadequate, plaintiff's remedy, and his only remedy therefor, was by a timely motion to set aside the sale. But even then mere inadequacy of price will not warrant the setting aside of a sale. It must be so grossly inadequate "as to shock the conscience and confound the judgment of common sense." *Stewart v. Severance*, 43 Mo. 333; s. c., 47 Mo. 366; *Phillips v. Stewart*, 59 Mo. 491; *Osgood v. Franklin*, 2 Johns. Ch. 23. (5) A trust did not grow out of the purchase by the heirs of Fudge, deceased. The sale being public, one at which the present plaintiff and any and all other citizens were at liberty to be present and bid, the conveyance by the sheriff, pursuant thereto, cannot be called in question by any one, certainly not by a mere representative of a creditor of Fudge, deceased. Fudge had no interest in the land at the time of his death, except as a mortgagee. *Dillinger v. Kelley*, 84 Mo. 561; *Johns v. Norris*, 22 N. J. Eq. 102–110; *Wilson v. Miller*, 30 Md. 82–90; *Ward v. Smith*, 3 Sanf. 592. (6) Not only the heirs of Fudge, deceased, but defendant Jackson, as administrator, had a right to bid for and purchase the land described in the petition. The purchaser, whether heir, administrator or stranger, would acquire an indefeasible title, unless he had been guilty of actual fraud in some way connected with the sale. *Ward v. Brown*, 87 Mo. 468; *Dillinger v. Kelley*, 84 Mo. 561; *Clark v. Drake*, 63 Mo. 354; *Price Heirs v. Evans*, 26 Mo. 30; *Ferris v. Van Vichten*, 73 N. Y. 113; *Hollingsworth v. Spalding*, 54 N. Y. 636; *Johns v.*

*Norris*, 22 N. J. Eq. 102; *Wilson v. Miller*, 30 Md. 82-90; *Ward v. Smith*, 3 Sanf. 592. (7) Defendants deny that plaintiff has suffered any wrong. He had the ability as well as the right to protect himself and the interests of the Hansbrough heirs, which he represented, by attending the sale of July 7, 1876, and bidding on the land; or by enjoining it, or by moving to set it aside, if he then imagined that he or any one else was prejudiced thereby. If he has suffered in this matter, it is because of his own laches, and not by reason of anything done or procured to be done by the heirs of Jacob Fudge. (8) If defendant John L. Jackson, as administrator of the estate of said Jacob Fudge, was guilty of any misconduct—any act of omission or commission—whereby plaintiff was injured, he and his securities are liable therefor; and plaintiff's only remedy is by action on his bond as administrator.

RAY, C. J.—The plaintiff herein seeks by the present bill to have two certain deeds declared fraudulent as to him, and to have the title and interest of defendants in the lands covered thereby sold to satisfy a judgment in his favor for some $4416.57, rendered in April, 1878, against defendant John L. Jackson, as administrator of the estate of one Jacob Fudge, deceased. The first of said deeds of date July 7, 1876, was executed to certain of defendants' children and heirs-at-law of said Jacob Fudge, deceased, by the sheriff of Cass county, under a sale upon execution pursuant to a judgment for $11,518.93, rendered by the circuit court, in March, 1876, in favor of defendant Jackson, as administrator of said Jacob Fudge, and against one Newton S. Erwin, on certain notes, executed by said Erwin to said Jacob Fudge, and also for the foreclosure of the mortgage, given by said Erwin on the land described in the present bill, to secure the payment of said notes, in favor of said Jacob Fudge. The other deed referred to is a certain deed of trust on said lands,

executed in March, 1878, by said heirs and purchasers at said sheriff's sale, to defendant Hall, as trustee, to secure the payment of two notes in favor of one Thomas Bainbridge for the aggregate sum of eighteen hundred and forty-five dollars.

The present bill charges that said sale by the sheriff under the judgment in favor of one John L. Jackson, as said administrator of the estate of said Jacob Fudge, deceased, and against said Erwin, was made by the order and procurement of said Jackson, administrator, etc.; that at his instance and request and procurement his wife, defendant Martha Jackson, and other designated defendants, children and heirs-at-law of said Jacob Fudge, deceased, became the purchasers of the land at said sale, for the inconsiderable sum of nine hundred dollars, whereas the lands were worth, and would have sold, under fair circumstances, for eight thousand dollars ; that said heirs and purchasers paid no consideration for the lands so purchased, but that said John L. Jackson, as such administrator, receipted to the sheriff for the said nine hundred dollars, being the amount of the bid at the sale by the defendant purchasers ; that said sum was credited on said execution, and that the lands were bought in, under a fraudulent combination between said Jackson, administrator, etc., and said purchasers, heirs-at-law of said Jacob Fudge, for the fraudulent purpose of delaying and defrauding plaintiff in the collection of his said judgment, debt and demand against the estate of said Jacob Fudge, deceased.

The bill further charges that said purchasers, said John L. Jackson, said defendant Hall, and one Bainbridge, with full knowledge of, and in pursuance of, said fraudulent purpose, entered into and executed the deed of trust aforesaid on said land ; that plaintiff does not know whether there was any consideration for the notes so given in favor of Bainbridge, and so avers that

there was none; that, if there was, the same has long since been paid; that said notes were, after maturity, endorsed and delivered to defendant Elizabeth Farmer, who had at the time full knowledge of the fraudulent purpose of her co-defendants in the execution of said deed of trust, and that the estate of Jacob Fudge, deceased, is, and was, insolvent at the dates said deeds were given, as all the defendants well knew. The answer of defendants is a general denial.

The judge of the circuit court being disqualified, Judge GANTT of an adjoining circuit was chosen by consent of parties entered of record to try the cause, who, after hearing the evidence, and taking the cause under advisement, at the next March term, 1886, dismissed the plaintiff's bill, and plaintiff thereupon, in due season, sued out this writ of error.

The sheriff's deed for the lands is made to certain of these defendants, who were the children and heirs-at-law of their father, Jacob Fudge. Disregarding for the moment the question of conspiracy and actual fraud, or fraud in fact, which the bill alleges, we may observe, that, so far as the heirs were concerned, they stood in no relations of trust to the estate of their father, and were at liberty, if they saw fit, to bid at the sale and to buy the land in like manner as if they had been in all respects entire strangers. The market was open to them as well as others. Nor was the administrator prohibited from becoming the purchaser thereat, the sale being by the sheriff, under judgment and process of the circuit court. *Dillinger v. Kelley*, 84 Mo. 565. In the case just cited the administrator bought at the sale foreclosing the mortgage held by one Keith on the land belonging to the intestate, whilst in the case now before us the decedent was the mortgagee and not the mortgagor, as in the former case.

But whether the deceased is mortgagor or mortgagee makes, we think, no difference in the rule as to the

right of the administrator to buy, where the sale, as in these cases, is made by the sheriff under judgments and process of the circuit court. The land, we may remark, was not in the possession or under the control of said Jackson, as administrator or otherwise, nor did he have any rights or duty in respect to it, beyond the right to have the sheriff levy upon it, and sell it at public sale, to pay off and discharge the said judgment. Having as said administrator recovered said judgment, it was his privilege and duty to direct the clerk to issue the execution, and this, we suppose, was done by the administrator in this case, or perhaps by his attorneys; but after the execution came to the hands of the sheriff, the sheriff, and not the administrator, was charged by law with the execution of the process, with the return and application of the purchase money, with the due execution of proper deeds to the purchasers, and in short with the entire responsibilities of the sale. As we said in the case above mentioned, the provisions of section 166, Revised Statutes, 1879, which prohibit an administrator from purchasing the land of his testator, have no reference to sales other than probate sales. So that if the administrator was in effect and in fact the purchaser, as is charged by the bill, he had, we think, a right to be, at that sort of sale, provided his conduct was fair and just in all respects.

The case of *Dillinger v. Kelley, supra,* goes over the general question as to the right of the administrator to buy the land of his intestate when sold by the process of the circuit court, and holds that there is nothing in the way of the validity of such purchases. Numerous authorities are cited and quoted in that opinion showing that our ruling, there had, is well supported by the decisions of other courts. In the course of that opinion the case of *Harper v. Mansfield,* 58 Mo. 17, cited and relied on by plaintiff herein, while held to be correctly decided on the facts of the case, is criticised

so far as some of the observations therein are concerned, which we hold should not be extended to cases where fraud does not appear. Our said ruling is decisive as to the right of the administrator to purchase at such sales the same as if he was a stranger to all the parties. Such judicial sales are favored by the courts, which incline to maintain the title of purchasers acquired thereat, in the absence of bad faith, conspiracy or collusion in respect to the same.

But the record does not show, as we apprehend and construe the evidence, either that the administrator in fact bought the land himself, or procured the same to be bought in, in the name of his wife and the other heirs, or that the administrator paid therefor, out of trust funds belonging to the estate, which seems to be the claim in part of counsel for plaintiff. In the first place he did not bid at the sale, nor is he named as a grantee in the sheriff's deed, but his wife, defendant Martha Jackson, however, is one of the grantees therein, and the administrator, as is admitted, paid for her interest. The transaction, as we apprehend the same, seems to be about this: Several of the heirs, including the wife of the administrator, agreed among themselves to purchase the lands if it did not sell too high, and to allow the absent heirs, who resided in other parts of the state, to come in afterwards if they wanted to. A. R. Fudge, for example, testifies in plaintiff's behalf, that the understanding was that Coleman Fudge, Mrs. Jackson and himself were to buy the property, and the other heirs could come in. The testimony of Jackson and his wife sworn in plaintiff's behalf, and that of Hall and Coleman Fudge, in defendants' behalf, is, we apprehend, to about the same effect. The administrator seems to have advised and acted with the heirs in behalf of his wife, who was one of them, but the heirs were, we think, the purchasers through said Hall, who did the bidding and gave their names to the sheriff as the

purchasers, and their names were accordingly inserted as grantees.

As to the alleged payment by the administrator for the land out of the trust funds, or funds of the estate, we may observe, in the first place, that the bill alleges that the estate was insolvent as defendants well knew at the date of the sale. There is, we apprehend, no dispute as to the insolvency of the estate. The administrator, introduced as a witness in plaintiff's behalf, testified that he had no money of the estate in his hands. He further testified that he had only received eighty or eighty-five dollars as such administrator, and, excluding for the present all question as to the nine hundred dollars of purchase money arising from the sale of the land, there is nothing to show that he ever received any other sum. So far as this sum is concerned the same is offset by the credits allowed him by vouchers, duly approved, for medical and burial expenses alone. He is charged in the inventory with certain notes, principally the Erwin notes, on which it is not claimed that he ever collected anything, and the appraisement bill for one hundred dollars, being the appraised value of the watch and compass which was the balance of the property or assets that came to his hands.

At the most the administrator could not be charged with more than one thousand dollars, that is the amount of the purchase money arising from said sale and said one hundred dollars, being the said appraisement bill. This is undisputed. But the evidence given by witnesses whom plaintiff himself produced, and especially that given by the administrator, at plaintiff's instance and in his behalf, shows that nearly fourteen hundred dollars was expended by the administrator in behalf of the estate, consisting of over seven hundred dollars attorneys' fees, and the amounts covered by vouchers allowed in the administrator's favor in his annual settlements and amounting to six hundred and seventy

dollars. Besides this litigation between the administrator and said Erwin to collect said notes and to foreclose said mortgage, the case of *Briant v. Jackson, Adm'r*, had been pending since 1872, perhaps, and at the date of said sale was in this court for the second time, and the evidence indicates that these sums had been advanced and expended by the administrator and heirs in behalf of the estate for costs, fees and other liabilities of the estate growing out of the litigation in which it had been involved. There is, however, some obscurity and uncertainty, perhaps, in the evidence as to the dates and application and modes of paying the said purchase money.

The administrator testifies that money derived from the sheriff's sale was paid to the sheriff, but how much, and when, he does not say. He further says that none of it was paid to him. In the settlement in June, 1877, the administrator did not charge himself with this nine hundred dollars, the purchase price of the land, but in a subsequent settlement, called a corrected settlement, there is an item like this: "To cash realized on judgment against Erwin, nine hundred and fifteen dollars," charged against himself. Why it was omitted in the former settlement, and charged in the other, is not made clear by the evidence, and is a matter of conjecture. The latter settlement was prepared for the administrator by the law firm of Hall & Givan, and was in the hand-writing of Mr. Hall, who, however, was not able to remember much, if anything, about it.

The deputy sheriff, called in plaintiff's behalf, seems unable to recall or explain his memoranda or endorsements on the execution returned in said cause. Some indefiniteness and uncertainty exists also in other evidence as to the dates and mode of paying the sheriff's costs of sale. The witnesses, however, were testifying after the lapse of some ten years, and so far as dates were concerned generally, or so far as the dates of the receipts and endorsements on the execution

returned by the sheriff were concerned, and the partic-
ulars as to how and when these were made, some defi-
ciency and uncertainty was, we think, to be expected.

Some of these parties, whose memories are imper-
fect in these regards, such as the deputy sheriff and said
Hall, are not in any way beneficiaries of the disputed
or contested sale, or affected thereby in this suit, and
their failure to explain when and how the endorsements
on said execution were made, or the dates and modes of
paying the costs of said sale are not remarkable or
justly calculated to arouse suspicion. At most, they
affect the value, rather than the honesty, of the testi-
mony. In view of the great lapse of time, however, we
do not think we ought to give the importance to defects
of this kind in the evidence that counsel for plaintiff
do. About all we can say in this behalf, is that the
dates of some of the receipts, and the want of certainty
as to other dates, makes it possible that some portion
of the costs and fees may have been derived from other
sources. Courts, however, cannot assume fraud from
mere obscurity or apparent error. *Picot v. Bates*, 47
Mo. 390. Nor disturb titles upon plausible conjectures.
*Evans v. David*, 98 Mo. 411. The sheriff's deed
acknowledges receipt of the nine hundred dollars by
the sheriff, and this is *prima facie* evidence of its pay-
ment, and the bill charges that this sum was credited
on the execution, so that while the evidence may fail to
show that it was paid on the day of sale, or any partic-
ular date with entire certainty, yet, after the lapse of
so many years, we do not think this ought to be con-
trolling.

As to the said fraudulent purpose or combination
of the heirs in borrowing said sum of eighteen hundred
and forty-five dollars, and executing the trust deed in
favor of Bainbridge to secure the notes given therefor,
we deem it sufficient to say that there is no evidence to
so show, but that the evidence shows the transaction to

have been *bona fide* in all respects. This branch of the case is, we believe, not seriously urged in this court.

Having now thus disposed of the above matters, we will next consider the remaining substantial facts and circumstances in evidence, as to the fraud alleged in respect to the said sheriff's sale in 1876, at which the heirs became the purchasers of the land now sought to be subjected to this bill in behalf of the judgment creditors of the estate of the father. It will be useful and necessary, perhaps, in this behalf, to give some preliminary facts and dates, which we will do as briefly as we can.

In April, 1860, one Bills and said Fudge executed to one Hays, as sheriff, two certain notes for one thousand and odd dollars each, for certain lands sold in a certain partition suit in which Hansbrough *et al.* were plaintiffs, and Fudge *et al.* were defendants. Said Briant, plaintiff herein, became successor in office to said Hays, and said notes not having been paid, he began suit to collect the same in March, 1872. Defendant had judgment in the circuit court, but this judgment was subsequently reversed by this court. See *Briant v. Fudge*, 63 Mo. 489. On retrial of the cause, and in April, 1878, plaintiff obtained the judgment which he now seeks to have paid, and which, on the defendants' appeal therefrom, was affirmed by this court in 1884. See 80 Mo. 318. The sale, under process of the circuit court, in the case of *Jackson, Adm'r, etc., v. Erwin*, at which these defendants bought, was had, as heretofore stated, in July, 1876. No motion was made or proceedings had in said cause to set aside the sale, nor was any effort made to disturb the same until this suit was begun in 1884, some eight years or more thereafter. So that, we see that while the defendants and heirs were unquestionably aware, at the time of the sale, of the pendency of the suit of *Briant v. Jackson, Adm'r*, there had been a judgment in defendants' favor therein in the circuit court.

which was, at the date of said sale, unreversed and still pending on the appeal to this court, taken therefrom on the part of the plaintiff. The mere existence of such suit, and defendants' knowledge thereof, were not, in this *status* of the case, circumstances, in themselves, of any probative value upon the question of defendants' fraudulent purpose, to hinder and delay plaintiff in the collection of the said claim. The obvious tendency of this knowledge, if important at all, would be, we think, the other way, as the litigation in that behalf had so far resulted in a judgment against plaintiff.

But to proceed: The evidence varies somewhat as to the value of the land; but a fair average would make the value perhaps about eight thousand dollars. The amount bid, to-wit, nine hundred dollars, is obviously a very low and inadequate sum. But mere inadequacy is not enough, though a circumstance of great weight. *Robinson v. Robards,* 15 Mo. 459. If gross, it is usually esteemed a badge of fraud, and with other circumstances may be decisive. *Curd v. Lackland,* 49 Mo. 451. In all cases great inadequacy justifies and requires a court of equity to closely examine the sale when properly called in question by parties having substantial interests in the property sacrificed. So that it becomes necessary to examine the circumstances of the sale in question, in order to give this feature of the case its due and proper weight and influence in the premises. In the first place the sale occurred at the usual place and at a usual hour, taking place at the court house door about eleven o'clock in the day. There seems to have been quite a crowd present at the time, and, so far as we can see, there was nothing unusual in the immediate transaction itself. The land failed to bring a proper and adequate price, but this, we think, was for the following reasons: Said Erwin, the mortgagor in the mortgage foreclosed at said sale, and defendant in said suit, was, it seems, still in possession of the land so sold, and

what is most important in this connection is the undisputed evidence, that Erwin's attorney, W. J. Terrell, was present at the sale on July 7, 1876, and gave notice that there were two suits pending and whoever bought had two law suits on hand; the first suit was for damages, N. S. Erwin *v.* The Heirs of Jacob Fudge on account of the notes given for land sold; the other and subsequent one by administrator against Erwin. The suit for damages was, we believe, pending for trial, and in the foreclosure suit the defendant had prepared and filed his bill of exceptions, and had under the law three years in which to prosecute his writ of error to reverse the judgment therein. Under these circumstances no one would much desire to bid, and no one would in fact buy unless at an unusual bargain. Whilst then the land went for a very low price, still, in view of these suits then pending and other probable litigation to obtain the possession and settle the title, this sum was not in connection with these facts and circumstances so grossly inadequate as to show fraud or to require us to annul the sale under judicial process to the highest bidder, which, as before said, the courts are inclined, in the absence of fraud or bad faith, to uphold.

Nor can we see any conspiracy or fraudulent conduct or combination on the part of defendants to prevent bidding at the sale. There were no appeals, false or otherwise, to the benevolence of bidders, such as exist in some of the cases, no pretense that defendants were acting for the interest of the judgment debtor, or his family or for any one else, and no statements on their part, either public or private, intended or calculated to keep purchasers from attending the sale or bidding thereat. In short, we see no evidence of any resort by any of these defendants to any trick or artifice to deter bidders or depress the price, or to secure the land at less than its value, and the low sum realized was unquestionably due to the sufficient causes

already mentioned, and it may be also to the further condition of the land market in that locality in that year, which is spoken of by one witness as being about as flat as could well be, whilst another witness testifies that times were hard, money scarce and property low.

Their desire, as shown by their agreement to buy if the land went cheap enough, was the usual one natural to all purchasers alike.   There was nothing in the agreement as to how much or how little they should bid, this being necessarily contingent and dependent upon the competition of other bidders.   The witnesses being some of the defendants, testifying as to this matter in plaintiff's behalf, deny that anything was said about purchasing the land for less than its value, or that any mention was made of the debts of their father's estate or the claims thereon by plaintiff or others, and there is, we think, and as already said, no evidence of any practices, impositions or deceits on the part of any of the defendants to depress the value in the estimation of others or to induce them to forbear to bid at the sale. The nature of their said agreement, as has been already intimated and more fully stated, is to this effect:   Certain of these heirs being defendants, A. R. Fudge, Coleman Fudge and their sister, Martha Jackson, wife of the administrator, John Jackson, agreed among themselves on the day, or shortly before the sale, that they would "buy the land if it did not go too high," and that the other heirs, who were absent and resided in other parts of the state, could come in afterwards, if they secured the land.   The administrator may have also been a party thereto, at least to the extent of his wife's interest, for which he paid.   There is no evidence to show that any one was prevented from attending or bidding at the sale in consequence of this agreement. Nor is there any evidence that any one of these heirs would have individually gone into the market or bid at the sale.   This agreement among the heirs representing

one interest probably would have increased the competition on their part as against the bidders generally at the sale, if the latter had not been influenced not to bid by the said warnings and matters hereinbefore mentioned. It is, we think, plain enough that other bidders were not influenced thereby, for it was not known to them, and there is no evidence that in its absence any of the parties thereto would have bid at the sale or had ever manifested any such intention. They naturally would act together as the land was the old homestead of their father, on which he had lived for twenty years, and for that reason, among others, the heirs wanted to buy it and would take more risk to purchase it on that account than others would likely take.

It is also urged that the administrator, who was present, ought to have bid in behalf of the estate. But we hold upon the grounds stated and authorities cited in this behalf, that the administrator could bid in his own behalf at this sheriff's sale under process of the circuit court, which is incompatible with the duty to bid on behalf of the estate. Besides this the estate was insolvent, as is conceded, and the administrator being without funds could not enter the market for that reason. It is also said that as there was only one bidder he should have stopped the sale. This also transfers, we think, the responsibility from the sheriff to the administrator. Besides this the adverse circumstances then operating against the sale of the land for a good price would have operated in all probability to the same extent at any adjourned sale which might have been had. Erwin, or his attorney, would probably have been present again to warn bidders. The time in which he could prosecute his writ of error from said judgment was three years, and the lien of the judgment would expire in that time.

These considerations would, we apprehend, occur to the administrator and sheriff and their legal advisers.

But for reasons already given we do not think the administrator under these facts and circumstances was under any obligation of this character, in sales of this sort.

We are accustomed to defer somewhat, even in equity cases, to the findings of the lower courts, and see no sufficient reason for a departure from our rule in the case before us. There is, we apprehend, no serious claim that the actual, intentional fraud which the bill charges is made out in the evidence, and, for the reasons given, the case, we think, is not one of fraud in law. The authorities cited for plaintiff are for the most part applicable, we think, to a different sort of a case.

The judgment should be affirmed, and it is so ordered. All concur.