Knoop v. Kelsey.

KNOOP, *Appellant,* v. KELSEY *et al.*

Division One, May 14, 1894.

1. **Sheriff's Sale**: INADEQUACY OF CONSIDERATION: FRAUD. While gross inadequacy of the price paid for land at a sheriff's sale may be a badge of fraud, it is not sufficient of itself to avoid the sale.

2. ———: ———: ———. There are, however, rare and exceptional cases in which the inadequacy will be deemed so gross as to amount to a flagrant abuse of judicial process, and equity may then grant relief on that ground alone.

3. ———: ———: FRAUDULENT DEED OF TRUST. Where a judgment creditor sells under execution the debtor's interest in property subject to a fraudulent deed of trust, inadequacy of price, together with want of knowledge of all parties to the sale of the fraudulent character of the deed of trust, is insufficient to avoid the sale at the creditor's instance.

Knoop v. Kelsey.

*Appeal from Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*E. R. Richardson* and *Draffen & Williams* for appellant.

(1) The circuit court erred in sustaining the demurrer to the petition. The facts stated entitled the plaintiff to equitable relief. The deed of trust was apparently valid. All the parties acted under a mistake of fact, and under the mistaken belief that the deed of trust was for a *bona fide* debt. The sheriff's sale should be set aside. A court of equity will interfere in cases of mistake. *Griffith v. Townley*, 69 Mo. 13; *Heintze v. Bently*, 34 N. J. Eq. 562; *Bently v. Heintze*, 33 N. J. Eq. 405; *Hunt v. Fisher*, 29 Fed. Rep. 801. (2) "If the inadequacy [of the price realized at the sheriff's sale] can be connected with or shown to result from any mistake, accident, surprise, misconduct, fraud or irregularity, the sale will generally be vacated, unless the complainant himself was in fault, or the rights of innocent third parties have become dependent upon the sale." Freeman on Executions [2 Ed.], sec. 309, page 1008; 1 Beach on Modern Equity Jurisprudence, sec. 48. (3) Where all the parties acted under a mistake of fact, equity can and will interfere, and will grant such relief as the facts of the case require. *Griffith v. Townley*, 69 Mo. 13; *Wilchinsky v. Cavender*, 72 Mo. 192; *Payne v. O'Shea*, 84 Mo. 129; 45 Mo. 393. (4) "A court of equity looks not so much to the formalities with which a transaction is clothed as to its very pith and substance." In the case at bar, under the conceded facts, the plaintiff, through the fraud of Kelsey, and

by reason of the mistake under which all the other parties labored, failed to realize the amount of his judgment out of the land. Huffman ought not to retain it for the insignificant price paid by him. The holders of the fraudulent mortgage should not be permitted to collect that. The plaintiff, in equity and good conscience, ought to be paid the amount of his debt out of this land. A court of equity can adapt its relief to the exigencies of the case in hand. *Luce v. Barnham*, 1 W. Rep. 732; *King v. Beeson*, 6 Cent. Rep., 559. (5) The petition is not multifarious. All of the allegations therein are necessary to authorize the court to set aside the sheriff's sale. The fact that the prayer of the petition is not only that the sheriff's sale be set aside, but also that the deed of trust be canceled, can not make the petition multifarious, even if the court could not grant all of the relief sought. *Saline County v. Sappington*, 64 Mo. 72. If any of the defendants were improperly joined in the suit, such defendants should have demurred, on the ground that they were not necessary parties. *Alnutt v. Leeper*, 48 Mo. 319. Where, however, a court of equity has once acquired jurisdiction, it will retain it, for the purpose of doing full, adequate and complete justice between the parties. The same facts that would justify the setting aside of the sheriff's sale would authorize the cancellation of the mortgage. All of the defendants were proper parties. *Real Estate Savings Ass'n v. Colonious*, 63 Mo. 290.

*Silver & Brown* and *Thomas & Hackney* for respondents.

(1) The circuit court did not err in sustaining the demurrer to the petition. The facts stated in the petition do not entitle the plaintiff to equitable relief,

and the authorities relied on by appellant are not applicable to the facts of this case. (2) Inadequacy of price is not sufficient to set aside a sheriff's sale. *Walters v. Hermann*, 99 Mo. 529 (land sold for $210, worth $5,000; *Briant v. Jackson*, 99 Mo. 598 (land worth $8,000 sold for $900); *Gordon v. O'Neill*, 96 Mo. 350; *Holden v. Vaughan*, 64 Mo. 588. (3) It was incumbent on plaintiff here, who was a party to the suit under which the sheriff's sale was made, if he desired to set it aside for matters *in pais* to have moved to do so at the return term of the execution. *Downing v. Still*, 43 Mo. 321. In *Harwood v. Railroad*, 17 Wallace, 78, a delay of five years on the part of the stockholders in bringing suit to set aside judicial proceedings regular on their face, under which the railroad property was sold, was held inexcusable. So the mere institution of a suit does not of itself relieve one from the charge of laches, and if he fails in the diligent prosecution of the action the consequences are the same as if no action was begun. *Johnston v. Mining Co.*, 148 U. S. 370, and authorities cited. (4) The court should only consider the third amended petition with reference to the demurrer, and on its face the defense of laches is well taken for it appears the sale was had in 1883. No presumption obtains in appellant's favor that the sheriff's sale was assailed in the former petitions. The report of the case on the former appeal shows the contrary; if the supreme court can take judicial notice of the record of a former appeal to determine what was decided therein, the point must still be ruled in our favor. Wharton's Evidence, sec. 3. (5) The five years' statute of limitations had run against plaintiff as to the right to set aside the sheriff's sale before the filing of the amended petition before the court on this appeal. R. S. 1889, sec. 6775 (last part of clause 4.) Where a new declaration or petition is

filed setting up a new cause of action, the statute runs until such new petition is filed. *Brill v. Transfer Co.*, 45 Mo. 563; *Sims v. Field*, 24 Mo. App. 558; *Holmes v. Trout*, 7 Peters, 171; *Miller v. McIntyre*, 6 Peters, 61. (6) The policy of the law is opposed to setting aside judicial sales of real estate. *State v. Sargent*, 12 Mo. 228; s. c., 76 Mo. 557; *Hewitt v. Weatherby*, 57 Mo. 276; *Jones v. Manly*, 58 Mo. 559. (7) No fraud or fraudulent misrepresentation is charged or claimed in connection with the sale, and the alleged mistake or misapprehension as to the validity of the mortgage is one of law for which no relief will be given. *Norman v. Norman*, 26 S. C. 41; *Goodnow v. Ewer*, 16 Cal. 461. (8) Where in a case like the one stated in the petition, the creditor elects to avoid the mortgage by selling the whole title in the land, the right to deny and contest the validity of the mortgage passes to the purchaser, and does not remain in the judgment creditor. *Freeland v. Freeland*, 103 Mass. 478. (9) The petition is multifarious in that it improperly unites distinct matters or causes of action, and one not affecting all the defendants to the suit, viz.: A suit to set aside a deed of trust from J. B. Kelsey to C. D. Nixon, trustee in favor of C. T. Kelsey, because alleged to be in fraud of the grantor's creditors and a suit to vacate the sheriff's sale of the land mentioned in the petition to defendant Green Huffman. The demurrer specifically raised the above objection of multifariousness. *Alexander v. Warrance*, 17 Mo. 228; *McGlothlin v. Hemery*, 44 Mo. 355; *Clark v. Ins. Co.*, 52 Mo. 272; *Mullen v. Hewitt*, 103 Mo. 639; *Walker v. Powers*, 104 U. S. 542.

MACFARLANE, J.—The suit is to set aside, as fraudulent, a deed of trust on a farm of about four hundred acres, situate in Morgan county, made by defendant J. B. Kelsey to Charles C. Nixon, in trust

to secure the payment of a note for $3,000 payable to defendant Charles T. Kelsey, and also to set aside a sheriff's sale of the same land to defendant Huffman, under certain judgments against said J. B. Kelsey, one of which was in favor of plaintiff, for about $1,700, and also the deeds by the sheriff to the purchaser. The deed of trust was recorded prior to the rendition of the judgment. A demurrer to the petition was sustained, and, from a judgment thereon, plaintiff appealed.

The petition is quite lengthy, but the ground upon which relief is demanded may be briefly stated as follows: Plaintiff, and several others, judgment creditors of J. B. Kelsey, procured his right, title and interest in the farm to be sold by the sheriff, under executions issued thereon. The farm was worth $4,000, but was at the time incumbered by the deed of trust above mentioned. At the sale, which was regular in all respects, the land was publicly sold and purchased by defendant Huffman for $285, and a deed in due form was executed, acknowledged and delivered to him, purporting to convey the interest of Kelsey in the land. No fraud or misconduct of any kind, for which the sheriff or purchaser is responsible, is charged. The deed of trust, while apparently valid, was, in fact, fraudulent. At the date of the sale the fraudulent character of the deed of trust was not known to either the creditors, the sheriff, or the purchaser, and the sale was made under the mistaken belief, on the part of all persons interested, that it was valid and secured a bona fide existing debt.

Under this state of facts plaintiff seeks to set aside the sheriff's sale and deed, and the fraudulent mortgage, offering to refund the money paid, and to subject the land to payment of his judgment on the ground of the inadequacy of the price paid, the mistake of the

parties as to the true character of the mortgage, and both these causes combined.

The case was once tried upon a petition which charged that only the equity of redemption of Kelsey was sold by the sheriff, and upon that trial the relief prayed for was granted. On appeal this court held, in effect, that the creditors could not, in terms, sell the equity of redemption, and afterwards assert that, as to them, the mortgage was void, and in effect say there was no equity of redemption. *Knoop v. Kelsey*, 102 Mo. 294.

The case was remanded and an amended petition was filed charging, as above stated, that the right, title, claim and interest of the defendant Kelsey only was sold. It was said by this court on the former appeal that "judgment creditors have two remedies against a fraudulent conveyance, be it a deed or mortgage, or a deed of trust in the nature of a mortgage. They may file their bill to set it aside and subject the land to the payment of their debts; or they may sell all the right, title and interest of the debtor, and in that case the purchaser succeeds to all of the rights of the creditors to set aside and avoid the fraudulent conveyance. *Lionberger v. Baker*, 88 Mo. 452. A conveyance made in fraud of creditors is, as to them, void at their option. They may affirm it, if they see fit to do so."

Judgment creditors undoubtedly have such an interest in the property of their debtor, as would entitle them, upon sufficient grounds, to question the validity of a sale thereof, made by the sheriff under execution. *Briant v. Jackson*, 99 Mo. 598. It may also be said, as well settled, that, while gross inadequacy of the price paid for land at a sheriff's sale may be a badge of fraud, it is not sufficient alone to avoid the sale. When such a sale is properly attacked, it is the duty of a court of equity to examine carefully all the circumstances, under

which it is made, and very slight evidence of fraud, or unfairness, on the part of the officer making the sale, may be sufficient to demand its cancellation. *Briant v. Jackson, supra; Phillips v. Stewart,* 59 Mo. 492. There are rare and exceptional cases in which the inadequacy is held to be so gross as to amount to a flagrant abuse of judicial process, and equity has granted relief on that ground alone. *Brown v. Railroad,* 43 Mo. 294; *Cobb v. Day,* 106 Mo. 300, and cases cited; *Walters v. Hermann,* 99 Mo. 532.

It is manifest that the inadequacy of price at this sale was not so gross and unconscionable as to place it in this latter class of cases. The question then is whether the want of knowledge of all concerned in the sale as to the fraudulent character of the mortgage, without knowledge of fraud on the part of any one, is sufficient, when coupled with the inadequacy of price, to avoid the sale at the suit of the creditors having it made.

As was said on the former appeal, *supra,* the purchaser of land sold subject to a fraudulent mortgage or other conveyance "succeeds to the right of the creditors to set it aside and avoid it." The right thereby acquired is a substantial one. The practice of first selling the interest of the owner, and allowing the purchaser to attack the incumbrance thereafter, for fraud, is the common and usual method adopted in this state. While the practice does not commend itself as one calculated to make the most equitable distribution of the debtor's estate, it is usually adopted and has never been disapproved.

Usually such incumbrances are valid on their face, and the evidence of the fraud rests only *in pais,* which requires investigation to establish. It necessarily follows that the amount bid at such sale is, in general, merely nominal, if the apparent equity of redemption

is of no value, though circumstances of suspicion as to the validity of a mortgage may be known. The sale is directed by the creditor and he thereby adopts the course he wishes to pursue. Instead of investigating before a sale, as to the validity of the mortgage or other conveyance, he procures a sale to be made to a *bona fide* purchaser, who was possessed of no more knowledge than he himself had, receives whatever purchase money is paid, and turns over the investigation, with the attendant expense and uncertainty of results, to him. Afterwards, perhaps years, he learns that the incumbrance can be avoided for fraud. Under such circumstances we are unable to conceive of any principle of equity which would allow him to repudiate the course he elected to pursue, and to reappropriate to himself the rights he permitted and, in a manner, induced the purchaser to buy, though unadvised as to the value of these rights.

Plaintiff can no more repudiate this sale, than he could, had only the equity of redemption been sold, which under the former decision he could not do. Want of information on the part of the creditor and purchaser as to the fraudulent character of the deed of trust is not a circumstance which, either alone or coupled with inadequacy of consideration, furnishes ground for equitable relief. To grant relief, in such cases, would leave no security to the rights of the purchaser of land, subject to mortgage. The result of such rule would be, that if the incumbrances were valid the purchaser would have them to pay in order to retain the land; if they were invalid he would have to turn the land over to the creditors as soon as the invalidity appeared. On the other hand the creditor could receive, and apply on his judgment, the amount realized on the sale, but if, afterwards, he found that the incumbrance was invalid he could subject it to his .

judgment. No one could risk bidding on the land under such uncertainty but the creditor himself. The same rule would entitle one who purchased under the mistaken belief that the mortgage was fraudulent; he could, on learning his "mistake," avoid the sale.

The policy of the law is to uphold execution sales, and secure the purchaser a good title, and to the creditor and debtor the best possible prices for the property sold. It disfavors such uncertainties and speculations as the principle contended for here would permit. The claim made in this petition we think without equity, and if adopted as a rule would operate unjustly to debtors who are honestly insolvent, by virtually turning over their property to their creditors at prices fixed by themselves. The rule heretofore followed in practice, and announced in the former appeal, that the purchaser succeeds to the rights of the creditor to have a fraudulent conveyance annulled we think best secures the rights of all parties. The creditors have their option to pursue this course or to have the cloud removed from the title before subjecting the land to sale, and they should be held to their election in case the sale is fair and regular.

*Heintze v. Bentley*, 34 N. J. Eq. 565, is cited and relied upon by counsel as being one in which relief was granted on analogous facts. The complaining creditor did, in that case, charge that he was mistaken as to the amount due on the mortgage when the land was sold, and the sheriff's sale and the mortgage were both canceled. It was found by the court in that case that the mortgage purported to secure a much larger debt than was actually due the mortgagee, and it was found further that while the sale was ostensibly made to another it was, in fact, made to the fraudulent mortgagee himself. The court says: "If Heintze (the purchaser and mortgagee) were entirely free from

blame with reference to the apparent amount of this mortgage, it might not be just for the court to interfere with his purchase, because of the complainant's mistake." The court characterized the sale as being "unfair." The opinion goes on to say that complainant "has lost the advantages which he might have gathered from a perfectly fair sale of these premises, and Wanner and Heintze (the debtor and the purchaser) are claiming the benefits of an unfair sale, induced by their own wrong." In the case at bar no unfairness or misconduct of the purchaser is charged. The want of analogy is apparent. Judgment affirmed. All concur.