PAYNE
*vs*
BURKS *et al.*

---

CHANCERY.

*Case* 97.

*May 3.*

The case stated.

# Payne *vs* Burks *et al.*

APPEAL FROM THE BARREN CIRCUIT.

*Frauds.    Fraudulent conveyances.    Equity.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

PAYNE purchased under two executions in his favor, and others in favor of one *Gillock*, against C. G. Hitch, two tracts of land, for $120 for each tract, as the property of Hitch. One of the tracts contained 450 acres, called the home tract, the other contained 250 acres, called the mill tract. The former was valued by persons select-

ed by the Sheriff, at $4 50 per acre, the latter at $6 00 per acre.

There was a large balance of Payne's executions left unsatisfied by his purchase.

The home tract was claimed by Wm. H. Hitch, the son, and the mill tract by Wm. W. Burks, the son-in-law of C. G. Hitch, under pretended purchases, made at a previous sale made by C. G. Hitch, at which all his estate, real, personal, and mixed, was sold and divided out among his sons-in-law and son. After the sale and purchase of Payne, C. G. Hitch and his son, John Hitch, about ten days before the Barren Court, in which the parties resided, (except Payne, who resided in Warren, and John Hitch, in New Orleans,) went across to Hart County, where Circuit Court was in session, and confessed judgments in favor of one Henry Warder, a brother-in-law of C. G. Hitch, on two notes, for near $700, agreed that executions should be taken out forthwith, which was done, and immediately placed in the hands of the sheriff of Barren, and levied upon the equity of redemption of C. G. Hitch, in the two tracts of land purchased by Payne, which was sold, and Wm. W. Burks became the purchaser, at $5 00 for each tract, received a deed from the sheriff and deposited the money due Payne on his purchase with ten per cent. thereon in the clerk's office, before the year for redemption had expired, making the necessary affidavit, as required by the statute.

Payne filed a bill charging fraud in the original sale and purchase by Burks and young Hitch, and in the confession of judgments and sale of the equity of redemption, and praying that the same may be set aside, and his titles, acquired by his purchase under execution, disencumbered and discharged from the pretended claims of Burks and young Hitch, and for general relief.

The Circuit Court determined that the sales made by C. G. Hitch to them, were fraudulent and void, but sustaining the sales of the equity of redemption, ordered the clerk to pay over to Payne the money deposited as the redemption of his purchase, and dismissed his bill as to further relief, and Payne has appealed to this Court.

The decree of the Circuit Court.

PAYNE
*vs*
BURKS *et al.*

General state-
ment of the facts
by which fraud is
proved.

We entirely concur with the Circuit Court in pronoun-
cing the original sale to young Hitch and Burks fraudu-
lent and void.

It was obviously ''conceived in sin and brought forth
in iniquity,'' as a device to parcel out the property of C.
G. Hitch among his sons-in-law and son, to the hinder-
ance and delay of his creditors.

We will not stop to enumerate the plainly marked
footsteps of fraud found in this transaction. They are too
palpable to escape the observation of the most casual ob-
server. We are also satisfied that Wm. W. Burks was
privy to and participated in the arrangement, and we are
bound to presume understood well the objects and pur-
poses of the sale. He is found at his father-in-law's the
night before, with Garnett Burks, another son-in-law,
when Martin, another son-in-law, who was sent for, ar-
rived. He informed Green several days before the inten-
ded sale. He first announced to Doss, who was sent for
as the crier, on the day of the sale, the purpose of the
old man. He held the list which had already been made
out, which contained a schedule of *all* the property of C.
G. Hitch, lands, slaves, and personalty, and gave out to
him, as he progressed, the articles to be sold. He seems
to have been the only purchaser who was prepared to
make payment, or a pretended payment, for his pur-
chase. He was the most active agent in carrying out the
scheme, and we must believe aided in devising it.

We also believe that the levy and sale of the equity of
redemption, under the executions in favor of Warder,
were devised, concocted, and consummated with the
same fraudulent purpose that dictated the original sale,
and as a mere device, more effectually to cover over and
secure to young Hitch and Burks the fruits of their for-
mer pretended purchases, against the claims of creditors.
The confession of judgment in another county, only
about ten days before the session of the Court of the
county of their residence, in favor of a brother-in-law, in
his absence, upon claims, one of which, from the time
interest is made to commence running, probably bears
date subsequent to the note described in the mortgage,
and the other is of recent origin. The consent that exe

cutions shall be taken out forthwith; the speedy deposit of the execution in the hands of the sheriff of Barren, and levy of the same upon the equity of redemption in the land, and sale and purchase of the same by Burks, at $5 00 for each tract, when C. G. Hitch was bound only as the surety of his son for the demands, and Warder held a mortgage upon the son's property to secure them and C. G. Hitch a mortgage upon other property for his indemnity, either of which might have been pursued by Warder for the satisfaction of his debt, without sacrificing the land of his brother-in-law, the mere surety, and would most likely have been done but for the fraudulent purpose to be accomplished by the sale—all concur in pointing to the motive and purpose of the proceeding with a certainty not to be misunderstood.

That Burks, who had been the active agent in the original fraudulent arrangement, was also privy to and aided in devising and consummating the latter stratagem, is apparent.

He had received and was the holder of the old man's mortgage of indemnity from his son, for the Warder debts, and a few days after the sale, is found to be the owner of Warder's executions, by assignment to him. He states to one of the attorneys of Payne "that *he* had been too *smart* for them in the purchase of the equity of redemption, and if Payne wished to succeed in lawing with *him* he must employ smarter lawyers than them."

Upon the whole, without pursuing the subject further, we are satisfied that the confession of judgment and sale of the equity of redemption was conceived and contrived in concert with Burks, with the fraudulent motive, purpose, and intent of consummating the prior fraudulent sale, and securing the property to the pretended purchasers, and should, as well as the former sale and conveyance, be set aside and annulled.

But Payne purchased the two tracts of land at a great sacrifice, and if permitted to set aside the sale of the equity of redemption, except upon equitable terms, would be enabled to hold the lands, so purchased, at about one-tenth of their value. This would be unconscientious and unjust. He, as complainant, seeking equity, should

A complainant, having purchased under execution, at a reduced price, property fraudulently conveyed, and bringing his bill to set aside a conveyance and

clear his title,
must do equity—
and in such case
the chancellor
will order a re-
sale of so much
of the property
as will satisfy
complainant's
demand, and a
release to defen-
dant as to the re-
mainder not sold.

do equity. He has an equitable right to his debts, interest and costs, and is entitled, in good conscience, to no more. He should, therefore, be allowed to annul the sale of the equity of redemption, and to subject the property to the payment of his demands, upon the terms only of surrendering his purchase.

The decree of the Circuit Court is reversed and cause remanded, that a decree may be rendered, setting aside the original sales and conveyance of the two tracts of land, also the sales of the equity of redemption and conveyance thereof, and decrees that so much of the said two tracts of land may be sold as may be necessary to satisfy and pay Payne's demands, interest and costs, including the amounts which he bid in his purchase of the tracts, under execution, and interest thereon, and his costs in chancery, and that he release and surrender to the purchaser his claim to so much of the land as may be sold to satisfy his demands, and to C. G. Hitch his claim upon the residue, if any remains after the sale, to accrue to the benefit of his vendees except so far as the rights of creditors may be concerned or affected, and that the clerk refund to Burks, upon application, the fund deposited for the redemption of the land, and the appellant is entitled to his costs in this Court.

*Robertson* for appellant: *Cates & Lindsey and B. & A. Monroe* for appellees.

