KINGMAN PLOW CO. ET AL., Appellants, v. E. S. KNOWLTON ET AL., W. C. JOHNSON ET AL., Appellees, and HOME STATE BANK OF HUMESTON ET AL., Appellees and Cross Appellants.

Executions: JUDGMENT LIENHOLDERS: FAILURE TO REDEEM. A judgment creditor may sell on execution land standing in the name of the debtor subject to prior liens; and ordinarily subsequent lienholders who fail to redeem within the time provided

by law lose their interest in or lien on the property, unless the debtor redeems.

**Judgment creditors:** EXECUTION SALE: REDEMPTION. A judgment creditor need not bring an action to cancel a mortgage, though fraudulent as to creditors, before selling the debtors land on execution, or before redeeming from an execution sale.

**Same:** FAILURE TO REDEEM: EFFECT. A judgment creditor who has permitted the statutory time for redeeming from an execution sale of his debtors property to expire, has by his own laches lost his lien thereon, and can not question the validity of a mortgage given by the debtor.

**Fraudulent conveyances:** SALE ON EXECUTION: QUIETING TITLE: CANCELLATION OF MORTGAGE. Where a debtor has fraudulently conveyed his property a judgment creditor may sell it on execution the same as though he had made no sale, and, after procuring a deed he may sue to quiet his title against a fraudulent grantee; but where the debtor still holds title to the property neither the creditor under whose judgment it was sold, nor the purchaser, can, after issuance of the deed, sue to cancel a mortgage on the ground of fraud, without showing the transaction to have been such that he might have had relief in a creditor's suit prior to making the sale.

**Same:** WHO MAY ATTACK A MORTGAGE AS FRAUDULENT. A mortgage though fraudulent is good as between the parties and as to all other persons unprejudiced thereby; and where the mortgaged property is of ample value over and above the mortgage to satisfy a judgment, the holder of the judgment can not attack the mortgage for fraud.

**Same:** CANCELLATION OF MORTGAGE BY JUDGMENT CREDITOR. Before a judgment creditor can set aside a mortgage given by his debtor he must show that the mortgage is prejudicial to him; that the debtor is not only insolvent but that he has not sufficient property which can be reached on execution to satisfy the judgment, or that execution has been issued and returned "no property found."

**Same:** ESTOPPEL: TRUSTS. A judgment creditor who has acquired title to his debtors land by a sale on execution and who by joining with other judgment creditors to set aside a prior mortgage on the land, which was good so far as he was concerned, and secures the relief sought and which would not have been granted to him had he proceeded alone, is estopped from claiming that he is entitled by virtue of his sheriffs deed to hold the land free of the mortgage, but will be held a trustee to the amount

of the incumbrance so set aside for the benefit of the other creditors entitled thereto. However, as the court cancelled the mortgage in the instant case, from which order no appeal was taken, the other creditors are given a lien upon the property to the extent of the apparent mortgage for the satisfaction of their claims *pro tanto.*

**Same:** RESALE OF LAND. Where a judgment creditor has acquired title to his debtors property on execution sale and other creditors knowing of the sale failed to redeem, but joined with the purchasing creditor in a successful suit to set aside a prior mortgage given by the debtor upon the property, which the purchaser could not otherwise remove, there need not be a resale of the land, but the purchaser should have the full benefit of his redemption, save as he is estopped from asserting it against the prior mortgagee, or those entitled to his rights by reason of having cleared the land of the mortgage.

*Appeal from Mahaska District Court.*—HON. K. E. WILCOCKSON, Judge.

WEDNESDAY, FEBRUARY 17, 1909.

REHEARING DENIED SATURDAY, JUNE 5, 1909.

THIS is a proceeding wherein plaintiffs and some of the defendants seek to redeem from a sale on execution, to set aside a mortgage made by E. S. Knowlton to Sylvia H. Knowlton, his wife, upon the real estate sold at sheriff's sale, and to subject the land or the proceeds thereof to the payment of judgments held by the appellants against Knowlton. The trial court set aside the mortgage, decreed Warren C. Johnson to be the absolute owner of the property, and quieted the title in him against all other parties to the litigation. Plaintiffs and most of the defendants appeal.—*Reversed* and *remanded.*

*H. H. Sheriff,* for appellants.

*J. F. & W. R. Lacey, F. T. Nash, Dwight F. Down-*

ing, W. R. Nelson, Ed Pritchett and H. H. Sheriff, for defendants, appellees, and cross appellants.

Warren C. Johnson and S. V. Reynolds, for appellee New Sharon Creamery Co.

Irving C. Johnson, Shangle & Gordon, Bolton & Wagner, and McNett & McNett, for other appellees.

DEEMER, J.—The facts are complicated and the issues obscure, and we shall have some difficulty in stating the case with any degree of clearness.   There is little dispute regarding the controlling facts, and the questions are largely of law.   E. S. Knowlton owned one hundred and eighty acres of land in Mahaska County, Iowa.   On the 24th day of March, 1904, he executed a mortgage upon the land to his wife, Sylvia H. Knowlton, purporting to secure a note for the sum of $5,800.   Knowlton was heavily in debt and practically insolvent when this mortgage was made, and for the purposes of the case, the Knowltons not having appealed, we must find that the mortgage was without consideration and fraudulent and void as to all creditors who were and are in position to challenge the same.   Between April 1, and November 9, 1904, various judgments were rendered against E. S. Knowlton.   Among these judgment creditors was one F. J. Enger, whose judgment was obtained April 1, 1904.   Execution was issued on this judgment March 27, 1905, levy made upon the one hundred and eighty acres of land April 4, and a sale had May 13, 1905.   The property was bid in by Warren C. Johnson for an amount sufficient to satisfy the judgment upon which the sale was had, and judgments held by Hunt, Helm, Ferris & Co., Fairbanks-Morse & Co., Temple Pump Co., and the Pattee Plow Co.   Thereafter defendant Irving C. Johnson purchased the judgments of the Oskaloosa Savings Bank and of the Frankel

State Bank, both rendered April 18, 1904, and upon the strength of these two judgments he (Irving C. Johnson) redeemed from the execution sale to Warren C. Johnson, and the satisfaction of these two judgments, together with the five which were satisfied by the execution sale, amounted to $4,700. Irving C. Johnson also procured an assignment of the original sheriff's certificate of sale, and upon the strength of his redemption and of the assignment of the certificate took a sheriff's deed to the property in due course on May 26, 1906, having invested in the property between $4,700 and $4,800. Neither Warren C., nor Irving C. Johnson were creditors of Knowlton, and Warren C. Johnson bid openly at a regularly advertised public sale, and there is no claim of any fraud upon his part, or upon the part of Irving C. Johnson. Irving C. Johnson regularly redeemed under the two judgments purchased by him, and as no redemption was made by any of the subsequent judgment creditors or by the owner, Knowlton, the sheriff's deed issued as before stated. The statutory period of redemption expired some time prior to May 26, 1906, the date of issuance of the sheriff's deed. It appears from the evidence that before the issuance of the execution on the Enger judgment, the attorneys for all the judgment creditors met in the office of Irving C. Johnson and discussed the validity of the Knowlton mortgage, and it was agreed among them that it could probably be defeated, and all were advised as to the likelihood that the mortgage upon the land could be set aside. We must assume for the purposes of the case that the mortgage was and is invalid as to all creditors who were entitled to challenge the same. Instead of redeeming from the execution sale as they had the right to do, the creditors commenced this proceeding, or came into it after the action was brought, and asked relief against the Knowlton mortgage, and as the case turns

largely upon the nature of the pleadings and issues tendered, it will be necessary to refer to them at some length.

On January 11, 1906, the Kingman Plow Company commenced this action, alleging its purchase of a judgment held by the E. Bement's Sons against Knowlton for the sum of $160, and the recovery of a judgment on its own behalf for $1,017.74, and the issuance of executions on each of said judgments, which were returned "no property found." This action was commenced about one month before the statutory period for redemption from the execution sale had expired. The execution sale and redemption satisfied the first seven judgments rendered in order of time against Knowlton, and the eighth is held by D. P. Thorpe, one of the defendants and cross-appellants. The first judgment mentioned in the Kingman petition filed in this case is the ninth in order of time, and the second is the twenty-fifth in order of time. The petition makes the following judgment creditors parties defendant: The New Sharon Creamery Company, the Hunt, Helm, Ferris Company, Fairbanks-Morse & Co., Temple Pump Company, Pattee Plow Company, Oskaloosa Savings Bank and Frankel State Bank, whose judgments were each and all satisfied by the proceedings under the execution sale, and the Interlocking Fence Company, the Havana Metal Wheel Company, the Oskaloosa National Bank, the Moline Plow Company, Schuttler & Hotz, the Brown Buggy Company, the Home State Bank, and Kingman & Co. Knowlton and his wife were also made parties defendant, as also was Warren C. Johnson. It was alleged that on and prior to March 24, 1904, Knowlton was largely indebted to various persons, firms and corporations to an amount exceeding $35,000, and that the mortgage made by him to his wife for $5,800, to which reference has heretofore been made, was without consideration, and was made with intent to hinder, delay and defraud his creditors; that Sylvia H. Knowlton then claimed to own the note and mortgage, and that she would

sell and put the same beyond the reach of the creditors of E. S. Knowlton unless she was enjoined from so doing.

We now copy the following paragraphs from the petition:

Plaintiff says that Sylvia H. Knowlton participated in said fraud and had knowledge thereof; and to enable the said defendant E. S. Knowlton to accomplish said fraud, the said Sylvia H. Knowlton claimed, and is now claiming, that she made the said defendant a loan for the amount of said mortgage, when in truth and in fact the said defendant E. S. Knowlton never borrowed any money from said Sylvia H. Knowlton. The plaintiff says that said defendant has no property other than the mortgage herein described out of which the plaintiff's claim can be made. Plaintiff is credibly informed, and alleges the truth to be, that the mortgage and note herein described was never delivered by the said E. S. Knowlton to said Sylvia H. Knowlton, and the same was recorded by the said E. S. Knowlton, and has at all times been in the possession and under the control of said E. S. Knowlton. The plaintiff says that, notwithstanding the fact that Sylvia H. Knowlton claims to be the owner of said note and mortgage, and that this plaintiff has a lien on said note and mortgage, or so much thereof as shall be needed for the payment and satisfaction of the judgments herein described, with interests and costs and accruing costs, and in equity said note and mortgage is liable and subject to sale under execution, or an order of sale that may be made by the decree herein for the satisfaction and payment of said judgments with interests, costs, and accruing costs. The plaintiff says that the mortgage from said E. S. Knowlton to Sylvia H. Knowlton, his wife, a copy of which is hereinbefore referred to and marked Exhibit C, was without consideration, notwithstanding the recital in said mortgage; that the grantee in said mortgage gave no consideration therefor, and the same was voluntary and without any consideration whatever, and the same is void. Plaintiff says that said D. P. Thorpe, and D. P. Thorpe, agent, claims a lien for some $2,200 or $2,300 against the defendant, said E. S. Knowlton, but this plaintiff is informed, and he alleges the truth to be, that some $4,000

or $5,000 worth of collateral was indorsed and delivered by the said E. S. Knowlton to D. P. Thorpe and D. P. Thorpe, agent, and that there has been money collected on said collateral to pay said claim in full, and that the same has been paid in full and should be canceled by this court.

As against the judgment creditors who were made defendants, and also against Warren C. Johnson, it was alleged that they each claimed some interest in or lien upon, the premises, but that this interest or lien, whatever it might be, was junior and inferior to the lien of the plaintiff. The prayer of the petition was as follows:

Wherefore the plaintiff prays that its lien, under and by virtue of the judgments hereinbefore described, be decreed a first lien, on the mortgage and note that is given by E. S. Knowlton to Sylvia H. Knowlton and recorded in Book 40, page 339, Mortgage Records of Mahaska County, Iowa, and that on final trial'of this cause that the said note, or so much thereof as shall be necessary, be decreed to be subject to sale under execution for payment of said judgments, interests and costs and accruing costs, and in the event of sale the plaintiff shall receive title to said note and mortgage, free and clear of all liens of any of the defendants herein named. The plaintiff further asks that the said defendants E. S. Knowlton and Sylvia H. Knowlton be required to answer under their own separate oaths, and make full and explicit discoveries by such answer of all the facts charged and alleged in this petition. The plaintiff further asks that the said D. P. Thorpe, and D. P. Thorpe, agent, be required to answer and make full and explicit answer as to the amount that has been received by said D. P. Thorpe on the collateral that was given to him by the said E. S. Knowlton, and that he be required to credit all the money that he has received, and that has been collected, on the judgment that he has against the said defendant E. S. Knowlton. In the event that the court finds that the plaintiff is not entitled to have a lien established on the note and mortgage herein described, the plaintiff asks that said mortgage be set aside, and that the

same be declared not a lien on said real estate, and that the plaintiff's judgment herein described be decreed a lien on said real estate described in said mortgage, to wit, The E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of the N.. W. $\frac{1}{4}$, and the N. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$, all in section 21, also the E. $\frac{1}{2}$ of the W. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ and the E. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$, all in section 16, township 77, range 15 W. of the fifth P. M., Mahaska County, Iowa. And the plaintiff asks the court to decree such other and further relief in equity as it shall find the plaintiff is entitled to receive.

In the further statement of the issues we shall only refer to the pleadings filed by the appellants and cross-appellants in so far as they relate to the rights, duties and obligations of Warren C. Johnson, appellee. Schuttler & Hotz, the Brown Buggy Company, D. P. Thorpe, and D. P. Thorpe, agent, filed answers admitting that they held judgments against Knowlton, but denying all the other allegations of the petition. The Home State Bank answered, pleading its judgment against Knowlton in the sum of $3,184.33 rendered October 4, 1904, and admitting the fraud charged against Knowlton and wife. It asked that the mortgages be set aside, and that its judgment be declared a first lien upon the real estate described in the mortgage. Knowlton and wife filed answers denying all charges of fraud in the mortgage. Warren C. Johnson answered April 26, 1906, denying the allegations of the petition, alleging that he had the sheriff's certificate of sale, that plaintiff has not redeemed from the sale, and that the time for redemption by it had expired. The answer also contains this paragraph: "Defendant, further answering, says that he joins with the plaintiff in the relief demanded against the defendants E. S. Knowlton and Sylvia H. Knowlton in so far as the setting aside of said mortgage from the said E. S. Knowlton to Sylvia H. Knowlton is concerned, and he asks that said mortgage be set aside, canceled and held for naught, and for such

other and further relief as he may be entitled to in equity." Harry E. Davis answered, pleading a judgment in his favor of date October 11, 1904, against Knowlton, and that the lien thereof was prior to plaintiff's judgment. He also filed a petition of intervention, in which he asked that his judgment be declared a lien upon any interest which the Knowltons had in the real estate in controversy prior to any claims of the other parties to the suit. Schuttler & Hotz, Brown Buggy Company, and Thorpe, individually and as agent, filed an amendment to their original answer, and also a petition of intervention, in which they alleged the recovery of judgments in the following order against Knowlton: One in favor of Thorpe, agent, of date April 18, 1904, for $2,200; one in favor of Schuttler & Hotz for $213.75, dated June 23, 1904; one in favor of Brown Buggy Company for $44.40, of date June 23, 1904, and alleging that these were prior to plaintiff's judgment, and they asked the following relief: "And further ask that the mortgage of Sylvia H. Knowlton on the real estate described herein be declared not a lien and defunct; that the judgments be declared a valid and first lien on the said real estate in the order in which they were entered. And these defendants ask the court to decree such other and further relief and equity as it shall find the plaintiff is entitled to receive."

On January 29, 1907, Davis, Schuttler & Hotz, Brown Buggy Company, Keystone Fence Company, Superior Haystacker Company, D. P. Thorpe, agent, and D. P. Thorpe filed an amendment to their petitions of intervention, in which they alleged that the mortgage from E. S. to Sylvia Knowlton was fraudulent, void and of no effect. They also pleaded that plaintiff's judgment had been fully paid and satisfied, and they made the following prayer:

Wherefore the intervener prays that the pretended mortgage standing in the name of Sylvia H. Knowlton, and fully set out in the petition herein and in the answer

of said Sylvia H. Knowlton, may be declared to have been in fraud of the creditors, without consideration and void; that the lien thereof may be set aside and declared void as to this intervener; that the judgment standing in the name of the Kingman Plow Company, and shown by the evidence to have been the property of John H. Dusenberry, may be declared to have been fully satisfied and said judgment declared void, and that the judgment set out in the original petition of intervention filed by this intervener may be established and declared to be a valid subsisting lien on the said real estate described in the original petition in this case; that it may be declared to be prior and paramount to all of the claims of the plaintiff and of the defendant herein, and may be declared to be prior and paramount to the claims and judgments of all of the interveners in this action, and for such other and further relief as equity may warrant for costs.

Knowlton also amended his answer, pleading the satisfaction and payment of plaintiff's judgment. The Rock Island Plow Company appeared, pleaded its judgment, of date December 7, 1904, and joined with the other interveners in the relief demanded. The Morrison Manufacturing Company also appeared, pleaded its judgment and joined in the Davis petition of intervention. Schuttler & Hotz, Brown Buggy Company, and Thorpe pleaded their judgments, and asked the following relief:

The defendants above named, and answering and intervening herein, pray that their judgment may be established and declared to be valid and liens on said real estate, and that they may be declared to be prior and paramount to the claims of the plaintiff and all other defendants in this cause, and further ask that the mortgage of Sylvia H. Knowlton on the real estate described be not a lien on said real estate, and that the defendants' judgment described herein be declared valid and first liens on said real estate in the order in which they were entered, and these defendants ask the court to decree such other and further relief and equity as it shall find the plaintiff is entitled to receive.

January 30, 1907, the Home State Bank filed an amendment to its petition of intervention, in which it pleaded, among other things, that both Irving C., and Warren C., Johnson, at the time of the execution sale and of the redemption by Warren C. and the making of the sheriff's deed, had notice and knowledge of the mortgage to Sylvia H. Knowlton, and that at the time Warren C. Johnson made his purchase he did so with full knowledge, and in recognition of the mortgage lien upon the property; that the execution of the mortgage was a fraud upon this intervener and the other creditors whose judgments remained unpaid after the sale of the land, and upon no other persons. It also alleged that the price paid by Warren C. to Irving Johnson was less than half the actual value of the land, and was made in full recognition of the mortgage, and that he (Warren Johnson) was not entitled to have the mortgage set aside. It was also alleged that the mortgage was a fraud upon this intervener and the other creditors of Knowlton, and not upon Irving or Warren C. Johnson.

As much depends upon the pleadings, we now copy from this petition of intervention the following:

This defendant and intervener further states that said Johnson, defendant, purchased said land with full knowledge, both actual and constructive, of the existence of this defendant and intervener's judgment, and of the judgments in favor of the other defendants and interveners in this suit, and of the fraud that was being perpetrated upon them by reason of the fraudulent execution and recording of this mortgage, and by reason thereof, and of the price paid for said land by said defendant Johnson, and the notice and recognition of said mortgage by defendant Johnson, he is estopped from now asking to have said mortgage canceled as to him, or to have this intervener's judgment not made a lien thereon. This defendant and intervener further says that by reason of said fraudulent mortgage, and by reason of the knowledge of the defendant Johnson as to fraud perpetrated upon this defendant, and others, by the execution and recording of

said mortgage, and the fact that he took title to said property with full knowledge of these facts, he is estopped from objecting to defendant's judgment being established as a lien thereon; that this defendant and intervener should be, and is now, entitled to an equitable redemption of said property from the sale made to said Johnson, and from the defendant herein who purchased with full knowledge, the same as the purchasers at the execution sale, and the same as Irving C. Johnson, grantor, and this defendant and intervener now asks that it be permitted to pay to said defendant Johnson all of the money paid by Irving C. Johnson for the redemption of said land in question, together with all costs and interests and improvements that have been made upon said premises since the purchase and redemption from the execution, upon this intervener's judgment being established as a lien against said property.

The prayer asked a transfer of the mortgage to intervener and other creditors of Knowlton:

And to establish its liens and make its judgments a lien upon the land in question, and that it be subrogated to the rights or lien created by said mortgage to said Sylvia Knowlton in and to the real estate conveyed by said mortgage, and that its lien be established to the extent and the amount of its judgment against said real estate, by reason of the mortgage having been made in fraud of this and the other unpaid creditors; that this intervener and defendant be decreed by the court to be entitled to redeem from said sale, and entitled and decreed that its lien be established upon said real estate upon payment to the said defendant Johnson of all money expended for the purchase of said land or improvements made thereon, as shown by the evidence in this case or the records of this court, together with interest, said redemption to be made within said time as is fixed by the court, and for other and further equitable relief.

On the same day, to wit, January 30, 1907, Davis, Thorpe and others amended their petition of intervention, pleading substantially the same matters set forth in the

petition of the Home State Bank. They also alleged that neither of the Johnsons could challenge the mortgage; that all the judgments acquired by them were fully satisfied; that their title under the sheriff's sale and deed was distinct from the title and interest represented by the mortgage lien; and that the execution and recordation of the mortgage upon the land was no fraud as to them, but that it was a fraud as to the interveners. They also alleged:

That these interveners are entitled to whatever rights and to whatever liens are credited against said land by reason of said mortgage, and are entitled to whatever interest and title the said Irving C. Johnson and Warren C. Johnson considered and recognized as existing as an equity in said land by reason of the execution and recording of said mortgage; and, by reason of the facts heretofore stated, and by reason of the fraud herein set out, these interveners are entitled to be subrogated to all rights, interest and title, and title represented by said mortgage, and are entitled to be subrogated to all rights and title of the mortgagee in said land, and to the equity in said land represented by said lien of said mortgage; that they are entitled to have transferred to them, for the purpose of satisfying their debts, any interests that were credited by reason of said mortgage, and recognized and considered by the said Irving C. Johnson and Warren C. Johnson in the sale and purchase as heretofore set out, and for the further reason that the evidence shows that a certain interest in said land represented by said mortgage was not purchased or acquired by said Johnson, but remains in said E. S. Knowlton as an equitable interest in said land, and is subject to the liens of the judgment of these interveners. The interveners further state that said Irving C. Johnson and Warren C. Johnson, defendants, purchased said land with full knowledge, both actual and constructive, of the existence of these interveners' judgments, and with full knowledge of the fraud that was being perpetrated on them by the said E. S. Knowlton and Sylvia H. Knowlton, through the fraudulent execution and recording of the mortgage above set forth; and by reason thereof, and of the inadequate price paid for said land by the defendant

Johnson, and by reason of the notice of the constructive and actual notice of said fraud, he is now estopped from obtaining any relief through the cancellation of said mortgage by this court. These defendants, therefore, aver that by reason of the frauds as above set forth, on the part of E. S. Knowlton and Sylvia Knowlton, and by reason of the knowledge and information of said fraud on the part of the defendants Irving C. Johnson and Warren C. Johnson, and the facts that said Johnsons made said purchase and took title to said property with full knowledge of all the facts herein set forth, these interveners are now entitled to an equitable redemption of said property from the execution sale made to the said Johnson, and from the defendant herein in whom the title now rests, who purchased the same with full knowledge of the facts set forth.

Their prayer was, among other things:

That the interest and title in said land, represented by said mortgage, be declared to be an equity belonging to the estate of E. S. Knowlton, and subject to the said judgments in the said order; that they be made liens upon the said equity in said land; that they may be subrogated to all the rights and liens claimed under said mortgage on said land; that said liens be established to the extent and amount of said judgments against said real estate; that these interveners may be decreed by the court to be entitled to redemption from said execution sale, and from the interest acquired thereunder by the defendant Warren C. Johnson; that these interveners may be authorized by the court to pay off and satisfy all prior claims against said land as decreed by the court, and that they may have such other and further relief as is equitable and just in the premises, and may have judgments for costs.

On February 1, 1907, plaintiff filed an amendment to its petition, in which Moline Plow Company, Havana Metal Wheel Company, and Dan Davis joined, in which they adopted the amendments to the petitions of intervention to which we have just referred, the same having been filed January 30, 1907, and they joined in the relief

asked. Warren C. Johnson, on January 28, 1907, filed an answer and cross-petition, in which he set forth the proceedings under the ·execution, the sheriff's sale, the redemption made by him, and the execution of the sheriff's deed; alleged that he was the absolute and unqualified owner in fee simple of the property; that the lien of plaintiff's judgment was junior and inferior to the liens for which the property was sold and under which redemption was made; that plaintiff had its opportunity to redeem as a judgment creditor, but failed and neglected to do so, and that he (Johnson) became the absolute and unqualified owner of the property in fee simple, free and clear of any liens claimed by plaintiffs, or any of the defendants or interveners. In a cross-petition he set forth substantially the same facts, and asks that his title to the property be quieted. The prayer of this pleading was as follows:

That said defendant joins with the plaintiff in the issue of fraud as to the defendant Sylvia H. Knowlton, and asks that the mortgage described in plaintiff's petition be set aside and held for naught, for the reason that the same is in fraud of the creditors of the said E. S. Knowlton whose claims have been satisfied by the judgments of the defendants named in the purchase of said property at said sheriff's sale and in the redemption therefrom. Wherefore defendant prays that his title be quieted in said premises as against the claims of the plaintiff and the defendants, and each and all of them, and that said mortgage to the said defendant Sylvia H. Knowlton be set aside and cancelled as in fraud of creditors of said E. S. Knowlton, and for such other and further relief as may be equitable.

To this plaintiff replied as follows:

As a further reply to the cross-petition filed herein by the said Warren C. Johnson the said Kingman Plow Company and J. H. Dusenberry deny that said Warren C.

Johnson is a creditor of E. S. Knowlton; deny that he ever has been a creditor of E. S. Knowlton; aver the truth to be that Warren C. Johnson and Irving C. Johnson purchased the real estate described in plaintiff's petition, with both actual and constructive notice of said mortgage referred to in plaintiff's petition, and neither one of said defendants are entitled to have said mortgage set aside as to them, and in the event that the court finds that the plaintiffs, Kingman Plow Company and J. H. Dusenberry, are entitled to any relief against the said E. S. Knowlton and his wife, that the claim of said Kingman Plow Company and J. H. Dusenberry be decreed a first lien on said mortgage and note.

After the amendments to the petitions of intervention were made on January 30, and on February 1, 1907, Warren C. Johnson pleaded by way of reply and answer the following:

He admits that he had constructive notice of the existence of the alleged mortgage to the said Sylvia H. Knowlton, but says that, as the purchaser of said premises under said execution sale for judgment of said Frank J. Enger, and a subsequent purchase of said premises, he acquired and was subrogated to all the rights of the judgment creditors whose claims were satisfied out of the money paid by him for said premises, to wit, the judgment creditors Frank J. Enger, Hunt, Helm, Ferris Company, Fairbanks-Morse & Co., Temple Pump Company, Pattee Plow Company, Oskaloosa Savings Bank, and Frankel State Bank, and that he has a right to attack said mortgage of Sylvia H. Knowlton as in fraud of creditors.

These are the issues upon which the case was tried, stated as shortly as possible in order to present the questions of law involved. After hearing the evidence the trial court set aside the mortgage, decreed that Warren C. Johnson was the absolute and unqualified owner in fee simple of the real estate, declared that all judgment liens against the real estate were fully and wholly discharged, and that

each and all of the lienholders were estopped from claiming any interest in or to the premises, and Warren C. Johnson was found and decreed to be clothed with all the rights of the seven creditors whose claims were extinguished by the sale of the lands, and the petitions of plaintiffs and interveners and of the cross-petitioners, save the cross-petitioner Warren C. Johnson, were dismissed. The appeal challenges these rulings, and it is stoutly insisted that in equity the appealing plaintiffs and defendants are entitled to have a decree for equitable redemption from the sheriff's sale, or in any event are entitled to be subrogated to the rights of Sylvia Knowlton under the mortgage, or to a decree establishing their judgments as liens against the land to the amount of the mortgage thereon in favor of Sylvia Knowlton, which was cancelled and declared void as a result of this litigation started by them, and in which relief Warren C. Johnson joined.

Many questions of law are argued by counsel, and upon some of them there is a decided conflict in the cases. We must start with the assumption that the mortgage from Knowlton to his wife was and is invalid as to all persons who in law or equity were entitled to challenge the same. We must also assume, for there can be no doubt of the law on this subject in this State, that any judgment creditor of Knowlton had the right to sell the land then standing in his name under execution properly issued, subject to all valid prior liens thereon, and that ordinarily any and all subsequent judgment lienholders, who failed to make statutory or other proper redemption within the time provided therefor, lost whatever right or interest in, or lien upon, the property they may have had, unless the judgment debtor himself made redemption within the time given him to do so.

1. EXECUTIONS: judgment lienholders: failure to redeem.

The creditors represented by the two Johnsons were not required to bring action to cancel or set aside the

mortgage before making sale or redemption of the prem-

ises.   The legal title was in Knowlton.

**2. JUDGMENT CREDITORS: execution sale: redemption.** Their judgments were liens thereon and they were fully justified in suing out executions selling the land, making redemption, and taking a sheriff's deed.   Whatever may be the view taken by courts in other States, we are fully committed to this doctrine, and must adhere to it on this appeal, or overrule many prior cases which have stood for years without challenge by the Legislature or by the bar of the State.   We need do no more in this connection than cite cases in support of the rule, among which are the following: *Harrison v. Kramer,* 3 Iowa, 543; *Bridgman v. McKissick,* 15 Iowa, 260; *McDonald v. Johnson,* 48 Iowa, 72; *Milliman v. Eddie,* 115 Iowa, 530; *Howland v. Knox,* 59 Iowa, 46; *Ramsdell v. Water Power Co.,* 84 Iowa, 484; *Waughtal v. Kane,* 108 Iowa, 268; *Sheppard v. Messenger,* 107 Iowa, 717.   Many cases from other States sustain the same view.   See *Bergen v. Carman,* 79 N. Y. 146; *Millis v. Lombard,* 32 Minn. 259 (20 N. W. 187); *Eastman v. Schettler,* 13 Wis. 324.   Some cases from other jurisdictions seem to hold that a fraudulent conveyance should be set aside in equity before a sale of the property under execution against the fraudulent grantee.

There is no proof of such inadequacy of consideration as would justify a court in setting aside the sheriff's sale and deed, and unless it be for a matter presently to be con-

**3. SAME: failure to redeem: effect.** sidered, the judgment creditors subsequent to those represented by Warren C. Johnson have no right of equitable redemption.   They allowed the statutory period within which they might make redemption to expire, and, having lost their lien upon the land through their own laches, they can not challenge the mortgage made by Knowlton to his wife.   These propositions are also fundamental, and we need only cite the following in their support: *Kalona Bank v. Eash,* 133

Iowa, 190; *Williams v. Dickerson,* 66 Iowa, 105; *Mc-Conkey v. Lamb,* 71 Iowa, 636; *Wood v. Rankin Bros.,* 119 Iowa, 449; *Witham v. Blood,* 124 Iowa, 695; *Savings Bank v. Silver,* 122 Iowa, 685; *Cooper v. Maurer,* 122 Iowa, 321; *Case v. Fry,* 91 Iowa, 132; *Cavender v. Smith,* 1 Iowa, 306; *Howard v. Kelly,* 137 Iowa, 76.

But it is argued that, Johnson having purchased subject to the mortgage, and redemption also being made subject thereto, neither the purchaser nor the redemptioners may attack the mortgage, but that plaintiffs

**4. FRAUDULENT CONVEYANCES: sale on execution: quieting title: cancellation of mortgage.**

and interveners may attack it, or rather subject it to the payment of their judgments, it having been made in fraud of their rights on the theory that Mrs. Knowlton holds the note and mortgage as a trust, either resulting or constructive, in favor of Knowlton's creditors, and that through these proceedings they may subject the mortgage and note to the payment of their judgments, although they have lost their right to redeem from the sale. They also claim that as Johnson joined with them in their attack upon the mortgage, and secured the setting of the same aside, which he could not have done by action on his own behalf, his title has been freed from a lien thereon by and through the efforts of the plaintiff and other judgment creditors, and that to this extent there is a lien or claim or equity in the property which he (Johnson) holds in trust for their benefit. These are the controlling propositions in the case as we view it, and we may eliminate all other contentions as collateral to these main points. The one basic proposition to be solved is this: Could Johnson, after having taken his sheriff's deed under the circumstances shown, have successfully maintained an action to set aside and cancel the mortgage? If he could have done this without the assistance of the other judgment creditors, then he is under no obligation to surrender anything to the plaintiffs or defendants, for he did not get anything to which he was

not entitled, and the subsequent judgment creditors lost their rights to redeem and did not offer in their pleadings to do so until after the statute had barred them of that right. If Johnson had the right, as the holder of the sheriff's deed, to set the mortgage aside as fraudulent, then, as we view it, that is an end of the controversy, for the reason, first, that the subsequent judgment creditors lost whatever lien they may have had upon the property; and, second, conceding their right to attack the mortgage, Johnson first commenced his attack, and is entitled to the property by reason of that fact. Regarding the right of a judgment creditor to sell the land of his debtor upon which there is a mortgage, and after getting a deed, supposing he is the purchaser, to set aside the mortgage as fraudulent, whether there be other creditors or not, there is a conflict in the cases. See *Wagner v. Law,* 3 Wash. St. 500 (28 Pac. 1109, 29 Pac. 927, 15 L. R. A. 784, 28 Am. St. Rep. 56), and note *Teague v. Martin,* 87 Ala. 500 (6 South. 362, 13 Am. St. Rep. 63). As heretofore indicated, we are fully committed to the doctrine that, where a debtor has fraudulently conveyed his property, his creditor may, after securing judgment, sell the property as if no sale had been made, and after procuring his deed bring action to quiet his title against the fraudulent grantee. See cases hitherto cited, and *McDonald v. Johnson,* 48 Iowa, 72; *Howland v. Knox,* 59 Iowa, 46; *Harrison v. Kramer,* 3 Iowa, 543; *Gardner v. Cole,* 21 Iowa, 209.

But we are constrained to hold that where the debtor holds the title, and that title is sold under execution, neither the creditor under whose judgment the property is sold, nor the purchaser at the sale, can, after deed is obtained, bring action to cancel a prior mortgage on the ground of fraud, without showing that the mortgage was such that, had he brought a creditors' bill before selling to subject the property, he would have been entitled to the

relief demanded.    That is to say, the mortgage was good as between the parties and as to all persons not prejudiced thereby; and, if there was ample value in the land to satisfy the judgment without cancelling the mortgage, the creditor could not attack it for fraud.  At an early day the Supreme Court of Michigan had this question before it, and in the course of the opinion it was said:

5. SAME: who may attack a mortgage as fraudulent.

But the case of *Cleveland v. Taylor*, 3 Mich. 203, and the other referred to, have little analogy to this.   In those cases the judgment debtor had conveyed away his whole interest, and any offer to sell on an execution against him necessarily attacked his conveyance.   The judgment debtor would understand this and his grantee would understand it, and take his measures accordingly.   So would all persons who should be inclined to become bidders at the sale understand it, and all would stand on an equality with the judgment creditor in making bids.   No doubt it would be proper for the sheriff expressly to give notice at the sale that the validity of the debtor's conveyance was disputed; but, as the offer to sell would be idle and meaningless if the conveyance was not contested, any such notice would obviously be unimportant.   In this case the situation was altogether different.   The judgment debtor had only mortgaged his lands, and an interest remained in him which was subject to execution sale without questioning the mortgage.   There is no doubt the judgment creditor might proceed to have this interest sold, and if he might also sell the complete title with the right to have the mortgage annulled afterwards, we must see whether he did the one or the other in this instance.   On this point the bill is silent, but the silence itself seems to us altogether conclusive against the complainant's case.   It does not appear by the bill that the sheriff in any of his actions questioned the validity of the mortgage; it does not appear that he offered to sell anything beyond the judgment debtor's apparent interest in the land; it does not appear that at the time of the sale anything was said or done that would have apprised Francis Huggard, the mortgagee, that the right to contest the mortgage was involved in the sale,

or that would have given one coming there in the character of bidder to understand that something besides the equity of redemption was being sold. A stranger to the judgment, purchasing under such circumstances, would have purchased the equity of redemption only, for he would have bid for nothing else, and would have offered and paid only what he considered the equity of redemption worth to him. . . . But nothing can be plainer than that, if the judgment creditor could bid with the secret assurance that he was to have an unincumbered title, when others must suppose they were buying subject to the mortgage, this assurance gave him an advantage in bidding to the full amount of the mortgage, and practically put competition entirely out of the question. Not only would this be unfair to other bidders, and for that reason inadmissible, but it would be particularly unfair to the mortgagee. When the sale appears to be of the equity of redemption only, the mortgagee has no occasion to trouble his mind about it; but, if he were distinctly notified that it was made in hostility to his mortgage, he might, even if conscious of his good faith, prefer to redeem rather than encounter the risks of litigation. This would be his legal right, and it can not lawfully be taken from him through a secret understanding between the officer and the creditor, of which he has neither actual nor implied notice.

See *Messmore v. Huggard,* 46 Mich. 558 (9 N. W. 853) (opinion by Cooley, J.). See, also, as sustaining the same view, *Payne v. Burks* (Ky.) 4 B. Mon. 492; *Apperson v. Burgett,* 33 Ark. 328; *Woodard v. Maslin,* 106 Mo. 324 (17 S. W. 308); *White v. Cates,* 37 Ky. 357; *Marshall v. Blass,* 82 Mich. 518 (46 N. W. 947, 47 N. W. 516); *De Grauw v. Mechan,* 48 N. J. Eq. 219 (21 Atl. 193); *Tigpen v. Pitt,* 54 N. C. 49; *Knoop v. Kelsey,* 121 Mo. 642 (26 S. W. 683); Id., 102 Mo. 291 (14 S. W. 110, 22 Am. St. Rep. 777).

Had any of the seven judgment creditors brought action to set aside the mortgage before selling the land, they would have been required to show that the mortgage was prejudicial to them; that Knowlton was not only insol-

vent, but that he had not sufficient property which they
could 'reach on execution to satisfy their
judgments, or that executions had been is-
sued and returned no property found.
The evidence in this case shows that there was ample value,
over and above the mortgage, to satisfy their claims, and
the property was in fact sold for enough to satisfy five
of the judgments and two other judgment creditors, or
their representatives thought there was enough of value in
it to justify redemption. There is nothing of record to
show that either Knowlton or his wife had any notice or
knowledge that the land was being sold otherwise than
subject to the mortgage; and, while the testimony does
show that most of the creditors thought that the mort-
gage could be set aside for fraud, there is no testimony
that bidding or redemption was made with this in mind.
Indeed there is nothing to indicate that Warren Johnson
made redemption with the thought in mind that he alone
would attack the mortgage.

6. SAME: cancel-
lation of mort-
gage by judg-
ment creditor.

Under such circumstances it would be most inequitable
for him to join with the other judgment creditors in their
attempt to set the mortgage aside, and after securing the
relief, which he would not have been entitled
to had he proceeded alone, give him the full
benefit thereof. By joining with plaintiffs,
interveners, and his codefendants in asking that the mort-
gage be set aside, and securing the cancellation of a mort-
gage upon land the title to which was in him, he should
be held to be a trustee of the land to the amount of the
incumbrance which was thus set aside for the benefit of
other creditors who were entitled to such relief. In other
words, having cleared the title of an incumbrance which
was good in so far as Warren Johnson was concerned, ap-
pellants are entitled to have the amount of the incum-
brance declared to be a lien upon the land. If the mort-
gage was fraudulent and void as to appellants, there is

7. SAME:
estoppel:
trusts.

another way in which their rights thereto can be worked out. It is elementary law that a fraudulent grantee or mortgagee of land or of personal property holds the property received by him in trust for creditors. Appellants are in equity entitled to a decree establishing a trust in their favor in and to the mortgage and note made to the fraudulent grantee. But, as the trial court canceled and set aside the mortgage, and no appeal has been taken from that finding, it is better, we think, to hold that to the amount of the apparent mortgage indebtedness held by Mrs. Knowlton, appellants have a lien or charge upon the property, for the satisfaction *pro tanto* of their claims. Such a decree will protect Johnson in his purchase, or rather redemption from the sheriff's sale, give him all the advantage to which he is entitled, and at the same time secure to appellants the fruits of the litigation to which they are entitled by reason of their proceeding to set the mortgage aside, in which proceeding Johnson joined. By reason of joining in that proceeding and getting relief which he could not have obtained save from the fact that appellants joined with him in the proceeding, he is estopped from now saying that, in virtue of his sheriff's deed, he is entitled to hold the land free and clear of the mortgage incumbrance.

Under somewhat similar facts some courts have held that there should be a resale of the property after it is cleared of the incumbrance. We do not think appellants are entitled to that relief here, for the reason that they knew of the sale, had an opportunity to redeem if they had seen fit, but for some reason neglected to take advantage of this remedy. Johnson should have the full benefit of his redemption save as he is estopped from asserting it as against the prior mortgagee, or one who is entitled to stand in her shoes by reason of having the land cleared of the incumbrance. The case has not been easy of solution, and for that reason

8. SAME: resale of land.

we have given more than ordinary attention to the able arguments and briefs of counsel, and have gone over the entire record with the care which the importance of the case demands.

We reach the conclusion that the decree should be reversed on this appeal, and the cause remanded for one in harmony with this opinion.—*Reversed* and *remanded.*