WAYNE COUNTY, Appellee, v. DAISY DUNCAN et al., Codefendants; C. W. ELSON, Trustee, Appellant.

No. 45710.

FEBRUARY 10, 1942.

REHEARING DENIED MAY 8, 1942.

Pearl W. McMurry, for appellee.

H. F. Garrett, for appellant.

BLISS, C. J.—On March 8, 1934, J. P. Duncan owned 220 acres of Wayne County land, which were clear of incumbrance. Being desirous of obtaining $1,500, on the date mentioned, he and his wife, Daisy Duncan, a defendant, sought to borrow this amount from the school fund. No money was available in the school fund at this time but it was agreed by the county auditor that such sum would be furnished Duncan as soon as available. Duncan and wife, on said date, as security for the money when it should be delivered, executed a mortgage conveying to the "Permanent School Fund of the State of Iowa," 160 acres of the land owned by Duncan. On August 31, 1934, J. P. Duncan received the $1,500 from the school fund, and, on the same day, executed his note for $1,500 payable to Wayne County, due in 5 years from date, as provided in the mortgage. The mortgage had been recorded on March 31, 1934.

Duncan and wife were not living together on March 8, 1934. He executed a warranty deed bearing this date naming Daisy Duncan as grantee and conveying to her the remaining 60 acres of his land, for the recited consideration of "one dollar, love and affection." This deed was recorded on March 31, 1934. He also executed a warranty deed bearing date of March 8, 1934, conveying the same land, which he had mortgaged to the school fund, to Wayne C. Browning and Kathleen Browning for a recited consideration of $4,000 in hand paid. The deed recited that the grantor, J. P. Duncan, reserved the use of the land during his life. It also recited that the land was conveyed free from encumbrance except the school-fund mortgage of $1,500 which the grantees assumed and agreed to pay. This deed was recorded on April 7, 1934. The appellant, Elson, who is an attorney at law, knew of the execution and recording of

the mortgage and the deeds from some newspaper item, and from the record. Elson, at that time, was the administrator of the estate of George A. Wright, and in that capacity held the note of J. P. Duncan for $980. As a witness in the case before us, he testified that on May 17, 1934, Duncan came to his office and asked him to get the land back which he had deeded to his wife and Browning, and stated that "they never paid me a dollar," as consideration. Elson, insofar as the record discloses, made no attempt to comply with Duncan's request, but the next day he prepared and filed a petition at law against J. P. Duncan, alone, as defendant, for judgment on his note belonging to the Wright estate. The petition alleged, as grounds for attachment, that Duncan was disposing of his property with intent to defraud his creditors and converting it into cash to place it beyond their reach. On the same day the writ of attachment was issued and levy upon the 220 acres, as the property of Duncan, was noted by the sheriff on the incumbrance book. This was all that was ever done with reference to the attachment. Elson immediately went to the county auditor and asked him if he had paid Duncan his money out of the school fund, and was told that there had been no money available in the fund. Elson testified that he told the auditor of the attachment and to hold the money for him. On September 17, 1934, Elson, as administrator, took judgment against Duncan on the note, and procured an order for a special execution for the sale of the attached land, but proceeded no further in the matter. He testified that he then went to the auditor and asked if the Duncan money had come in and the auditor told him it had and that he had paid it to Duncan on August 31, 1934. Elson also testified that about January 11, 1936, Browning told him that he had paid Duncan no consideration for the land, and that at that time an agreement was put in writing, providing that Elson would sell the Daisy Duncan land on execution and bid it in for $450, but that he would not sell the Browning land but would wait until Duncan died, and then Browning would procure a loan from the school fund, and if he did not, Elson would sell on execution. All copies of this writing had been lost. Elson sold the Daisy Duncan land at execution sale and bid it in for $450, and received sheriff's

deed. Elson testified that Daisy Duncan then came to him and told him she paid nothing for the land and asked him to convey the land to her son for what he had in it. She then quitclaimed to him and he conveyed to the son and received as consideration a mortgage for $500 on the land.

Just when J. P. Duncan died does not appear, but Elson made no further move to realize on his judgment.

The school-fund mortgage of the plaintiff not having been paid, the appellee filed petition for foreclosure on May 29, 1939, naming those as defendants who are set out in the title herein. Elson had been made defendant as an individual, and on March 15, 1940, he filed a disclaimer as an individual, and appeared specially as trustee, and attacked the jurisdiction because of the misnomer. Decree of foreclosure was entered as to all other defendants and continued as to Elson. On March 29, 1940, he filed answer alleging the various transactions we have noted herein, and further alleging that plaintiff's mortgage and the Duncan deeds were all given and received with the intent to defraud the appellant. He alleged the superiority of the lien of his judgment over plaintiff's mortgage, and prayed that it be so decreed.

Appellee, on November 7, 1940, filed a reply denying the allegations of the answer, and that it set up any defensive matter, and that it was entitled to any relief. At the same time, appellee filed a motion to strike the answer for the reasons that: (1) the answer showed on its face that any claim of defendant is barred by the statute of limitations; (2) that defendant had waived any claim by laches; (3) that the answer shows defendant is not entitled to any relief; (4) that whatever rights the defendant may have cannot be adjudicated in the manner alleged and prayed in the answer; (5) that the answer shows the defendant has no rights in said real estate superior to the rights of plaintiff under its mortgage.

Evidence was introduced by the appellee and appellant. By their agreement, the appellee's motion was submitted with the case. The trial court, after a full review of the record and upon the whole case, found that the equities were with the plaintiff and that the lien of its mortgage was senior and

superior to any lien, right or title of the defendant, Elson, as trustee. The court found that each ground of plaintiff's motion was good. Judgment and decree for plaintiff was rendered in harmony with the findings. We are satisfied that the decision of the trial court is right. There is nothing in the record to sustain a finding that plaintiff's mortgage was either given, or received with any intention of defrauding the appellant. Prior to his action on Duncan's note to his intestate, and his alleged attachment, he had full knowledge of all matters in connection with the Duncan transfers, yet he made no attempt to follow the statutory provisions in attaching an equitable interest. After obtaining his judgment against Duncan, he could have proceeded in equity to subject any property of Duncan in the possession or control of others to the payment of the judgment, as provided in Code section 11815 et seq., but he took no such steps.

If the mortgage and deeds were executed in fraud of creditors, he could have proceeded under Code sections 12105, 12106 et seq. to reach any equitable interest that Duncan may have retained in the real estate, but he made no such attempt. After procuring his judgment, he might have proceeded in equity to set aside the alleged fraudulent transfers but he began no such action. He cites and relies upon the rule in Kingman Plow Co. v. Knowlton, 143 Iowa 25, 119 N. W. 754, stated on page 45 of the Iowa Report, page 761 of 119 N. W., to wit: "As heretofore indicated, we are fully committed to the doctrine that, where a debtor has fraudulently conveyed his property, his creditor may, after securing judgment, sell the property as if no sale had been made, and after procuring his deed bring action to quiet his title against the fraudulent grantee." (Citing cases.) He made no attempt to obtain relief in this manner. He might also have levied on Duncan's life interest, but he did not.

The appellant had both constructive and actual knowledge of the execution of all of the Duncan transfers, and of any fraud in connection therewith, in March, April and May of 1934, and yet he permitted the five-year limitation statute [Code section 11007 (5)] to pass by without any attempt on his part to use any of the statutory remedies which were avail-

able to him. Instead, by his dealings and agreement with the Brownings, he recognized and treated the Duncan deed to them as a valid conveyance, when he knew that by the terms of that deed the plaintiff's mortgage was recognized as a valid lien which the Brownings assumed and agreed to pay. By his agreement with the Brownings, he so recognized its validity. He claims that his agreement was in effect the same as if he had brought suit and set the deed aside. We cannot agree with such contention. Such agreement was not binding upon either the plaintiff or Duncan, as neither of them had any part in it.

The court was right in sustaining plaintiff's motion to strike, and we agree with its decision on the merits of the case.

We have fully considered the various propositions advanced by appellant in support of his contentions, but we find no merit in them. The judgment and decree is affirmed.—Affirmed.

MITCHELL, SAGER, OLIVER, HALE, MILLER, WENNERSTRUM, GARFIELD, and STIGER, JJ., concur.